# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HARTNEL LAMBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: |
| v. | ) | 2:18-cv-1112-JEO |
| | ) | |
| THE BOARD OF TRUSTEES | ) | |
| OF THE UNIVERSITY OF | ) | |
| ALABAMA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff Hartnel Lambert ("Plaintiff") brings this action under 42 U.S.C. §
1983 against the Board of Trustees of the University of Alabama (the "Board") and
Arline Savage, Ph.D (collectively "Defendants"), based on alleged violations of the
Due Process and Equal Protection Clauses of the Fourteenth Amendment, arising
from a failing grade Plaintiff received in an undergraduate course at the University
of Alabama at Birmingham ("UAB").  (Doc.[1] 1 ("Complaint" or "Compl.")).  The
cause comes to be heard on the Defendants' respective motions to dismiss, filed
pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (Docs. 6, 7).  In his opposition
brief, Plaintiff's includes a request that he be granted leave to amend to name

---

[1] References to "Doc(s). __" are to the document number(s) of the pleadings, motions, and other
materials in the court file, as compiled and designated on the docket sheet by the Clerk of the
Court.  Unless otherwise noted, pinpoint citations are to the page of the electronically filed
document in the court's CM/ECF filing system, which may not correspond to pagination on the
original, "hard copy" of the document presented for filing.

individual members of the Board as additional defendants. (Doc. 16 at 19). Finally, in their joint reply brief, Defendants have argued for the first time that the Complaint is due to be dismissed as moot because Plaintiff has been awarded his undergraduate degree by UAB and is enrolled in one of its graduate school programs. (Doc. 19 at 24-25). Upon consideration, the court[2] concludes that, while Plaintiff's claims are not moot, they are due to be dismissed. The court will also deny Plaintiff's request for leave to amend.

## I.  Background

### A.  Allegations of the Complaint

The salient allegations of the Complaint are these: Plaintiff is African-American. (¶ 4[3]). At the time of the events underlying his claims, he was an undergraduate at UAB, majoring in accounting. (¶ 9). In addition to pursuit of those studies, Plaintiff also "operated an accounting business of his own which specialized in tax preparation and business consulting." (¶ 9).

In the spring term of 2017, Plaintiff was enrolled in Accounting 490 ("AC 490"), an elective within UAB's School of Business. (¶ 9). As part of the course, students were required to volunteer their time to assist individuals with the preparation of their income tax returns. (¶ 10). While volunteering at one of the

---

[2] The parties have consented to an exercise of plenary authority by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 14).

[3] Citations in this section to "(¶ ___)" refer to the paragraph number(s) of the Complaint.

locations set up for students to provide such assistance, Plaintiff was approached by one John Joseph Reeser. (¶ 10). The owner of a home heating and air conditioning business (¶12), Reeser indicated he wanted help from the program in preparing the income tax return for his business. (¶ 12) However, students in the course were not allowed to provide tax preparation assistance to businesses (¶ 10), and the program was "not equipped" to prepare Reeser's return "because of the complexity of his needs." (¶ 11). Accordingly, Reeser was rejected as ineligible for assistance under the program. (¶ 18). During their conversation, however, Plaintiff told Reeser that he was interested in having Reeser perform some heating and air conditioning work at Plaintiff's home. (¶ 12). Reeser gave his business card to Plaintiff. (¶ 12).

Plaintiff later called Reeser to schedule an appointment for the air conditioning and heating work. (¶ 13). In the course of that discussion, Reeser again "questioned [Plaintiff] about help with filing [Reeser's] business return." (¶ 13). After Plaintiff told Reeser of "some general steps he could take to help himself," Reeser asked Plaintiff if he would prepare his business tax return for him. (¶ 13). Plaintiff agreed to do so for a fee of $297.00. (¶ 13). On April 16, 2017.[4] Plaintiff and Reeser met on the UAB campus, whereupon Reeser provided Plaintiff

---

[4] Although "tax day" is traditionally April 15th, in 2017, federal income taxes were due on Tuesday, April 18th. http://fortune.com/2017/03/06/tax-day-2017-when-is-it/.

with documents to complete Reeser's return.  (¶ 15).  Reeser also apparently paid Plaintiff the agreed-upon fee.  (*See* ¶¶ 13, 21).

On April 25, 2017, Plaintiff received an email from Eddie Nabors, the AC 490 course instructor.  (¶ 16).  Nabors told Plaintiff he needed to attend a meeting in the Dean's office on April 27th to address "an issue that arose as part of [the] class."  (¶ 16).  When Plaintiff asked for further information about the "issue," Nabors remained vague, advising that it would be discussed at the meeting.  (¶ 16).

Upon arriving at the meeting, Plaintiff was confronted by four white males. (¶ 17).  Two were from UAB:  Nabors and Assistant Professor of Finance Larry Cowart.  (¶ 17).  The other two were associated with an entity Plaintiff's Complaint identifies only as "Savefirst," although it fails to include any explanation of what it is or what relation it might have had to UAB or the AC 490 course.[5]  (¶ 17).  In any event, Plaintiff alleges that one of the Savefirst representatives, its founder and then-President Stephen Black, accused Plaintiff of having committed a crime by performing the tax preparation services for Reeser. (¶¶ 17, 18).  Plaintiff further claims that Black, Cowart, and Nabors "continuously threatened [him] with state and/or federal prosecution … [and] incarceration." (¶

---

[5] According to materials available online, "SaveFirst" is a program administered by a Birmingham-based organization called "Impact America," in which "IRS-certified Volunteer Tax Preparers from local colleges" provide "free tax preparation services" to people who have income below certain thresholds.  https://impactamerica.com/savefirst/; *see also* https://www.uab.edu/business/home/inthenews/1048-uab-accounting-students-contribute-to-record-year-for-savefirst.

19).  Plaintiff protested that he had done nothing wrong because he had not soliticed business from Reeser; rather, Plaintiff explained that he had agreed to prepare Reeser's tax return only after Reeser had been rejected by the volunteer program as ineligible and had approached Plaintiff away from school.  (¶ 18).  At the conclusion of the meeting, Plaintiff was told "that a decision regarding his future at UAB would be forthcoming."  (¶ 20).

A few days later, Plaintiff checked his grades and discovered he had been given a failing grade of "F" in the AC 490 course.  (¶ 20).  Plaintiff scheduled a meeting with Defendant Savage, the Chair of UAB's Department of Accounting and Finance.  (¶ 21).  At that meeting on May 7, 2017, Plaintiff handed Dr. Savage a money order for $297.00, requesting that she forward it to Reeser, representing a refund of the tax preparation fee Reeser paid to Plaintiff.  (¶ 21).  According to Plaintiff, Dr. Savage told Plaintiff that he received the "F" in the AC 490 course because he didn't have enough volunteer hours.  (¶ 22).  Plaintiff, however, says he immediately produced emails from Savefirst showing that he did, in fact, have more than enough volunteer hours to satisfy the course requirements.  (¶ 22).  Dr. Savage then allegedly advised Plaintiff that he had received the "F" because he had prepared Reeser's business tax return and charged him a fee.  (¶ 23).

## B. Procedural History

On July 20, 2018, claiming that his failing grade "led to his … withdrawal from [UAB]" (¶ 2), "dramatically lowered [his grade point average,] and caused him significant problems in completing his undergraduate studies and attending graduate school" (¶ 23), Plaintiff filed this action. As defendants, Plaintiff has named the Board and Dr. Savage, with the latter being sued in both her official and individual capacities. (Compl. at 1, Caption). Plaintiff sets out his claims in two counts. The first, "Count I," is captioned, "Declaratory Relief." (*See id.* at p. 7). After incorporating by reference all preceding paragraphs of the pleading (¶ 24), Count I contains but a single operative sentence:

> [Plaintiff] seeks entry of an order declaring that he was denied due process of law and equal protection of the law under the United States Constitution, Amendment Fourteen[,] and that his rightfully earned grade be set forth on his transcript and that all mention of the 'F' wrongfully given to him be removed from his academic files along with any indication of the incident set forth in this lawsuit.

(¶ 25).

"Count II," in turn, is captioned, "42 U.S.C. § 1983 & Constitutional Claims (Due Process and Race Discrimination)." (Compl. at p. 7). It too incorporates all preceding allegations. (¶ 26). Among those are assertions that Plaintiff had a constitutionally protected "property interest in continued enrollment in a state school" (¶ 3) and that he was denied due process on the theory that, "before the decision to fail him was made, … he was not given an opportunity to call

6

witnesses, seek counsel, or cross-examine his accuser(s)."  (¶ 2).  Plaintiff also

contends that his rights under the Equal Protection Clause were violated in that he

"was subjected to unwarranted discipline on the basis of his race which led to his

receiving a failing grade."  (¶ 2).  At the end of Count II, Plaintiff demands the

following relief:

> (a) preliminary and/or permanent injunctive relief, including but not limited to, back pay and front pay or reinstatement in lieu thereof;
>
> (b) Compensatory damages;
>
> (c) Punitive damages [against the individual Defendant]; and
>
> (d) Attorney's Fees.

(¶ 29).

Notwithstanding that Count I and Count II each contain a demand for relief,

Plaintiff's Complaint also concludes with a separate "Prayer for Relief."  (Compl.

at pp. 8-9).  However, that "prayer" essentially consists of additional demands for

the same declaratory and injunctive relief sought in Count I (*id.*, Prayer for Relief

¶¶ 1, 3) and for compensatory damages, punitive damages, and attorney's fees as

sought in Count II.  (*Id.*, Prayer for Relief ¶¶ 2, 4).  In addition, Plaintiff's "Prayer

for Relief" asks generally for an award of "costs … and expenses," plus any other

"relief and benefits as the cause of justice may require."  (*Id.* ¶ 4).

Defendants have filed respective motions to dismiss. (Docs. 6, 7). The Board argues that it is entitled to a dismissal because, among other reasons, it is an arm of the State of Alabama and thereby enjoys immunity under the Eleventh Amendment. Dr. Savage likewise claims Eleventh Amendment immunity to the extent she is sued in her official capacity. Both Defendants further argue that Plaintiff's allegations are insufficient to state a plausible claim that the Board or Dr. Savage violated constitutional guarantees of due process or equal protection. Dr. Savage also contends that, even if Plaintiff could plead such a violation, she is protected by qualified immunity as to any claims for damages against her in her individual capacity. Finally, both Defendants also argue that Count I is due to be dismissed because it is merely a demand for a certain kind of relief, namely, a declaratory judgment, not a discrete "claim" based on a legal theory under which liability might attach. Defendants also both argue that Count I is subject to dismissal because it is redundant of Plaintiff's other demands for similar relief set out in Count II and his "Prayer for Relief."

Plaintiff filed a consolidated response in opposition to Defendants' motions. (Doc. 16). Plaintiff argues therein that the Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), "allows [him] to seek declaratory relief from both Defendants." (*Id*. at 9). Alternatively, he contends in this vein that should the court deem his claims against the Board to barred by the Eleventh Amendment, he

is entitled to leave to amend to sue the individual members of the Board for relief under *Ex parte Young*. (*Id*. at 19). Plaintiff further insists his being given a failing grade in the AC 490 course was racially discriminatory and that qualified immunity does not shield Dr. Savage from liability for that decision. (*Id*. at 11-13). Finally, Plaintiff argues that his being given that failing grade without prior notice and an opportunity to be heard violated both the substantive and procedural components of the Due Process Clause. (*Id*. at 13-19). In support of his due process claims, Plaintiff complains that "Defendants utterly failed to provide [him] protections due him according to UAB's Student Code of Conduct," from which he quotes an excerpt outlining rights students are deemed to possess as it relates to administrative proceedings under that code. (*Id*. at 13-14). Plaintiff has also attached to his opposition brief a copy of the UAB Student Conduct Code (Doc. 16-1), of which he asks the court to take judicial notice. (Doc. 16 at 13 n. 3).

Defendants filed a consolidated reply in support of their motions to dismiss. (Doc. 19). Defendants there largely reiterate and reinforce their prior arguments regarding (1) the purported redundancy and insufficiency of Count I; (2) Eleventh Amendment immunity and the *Ex parte Young* exception thereto; (3) the alleged insufficiency of Plaintiff's allegations to establish that the Board or Dr. Savage caused a violation of Plaintiff's right to due process or equal protection, and (4) Dr. Savage's claim of qualified immunity. Defendants also deny that Plaintiff is

entitled to amend the Complaint to add individual members of the Board as defendants. (*Id*. at 23-24). Finally, Defendants also argue for the first time in their reply brief that Plaintiff's Complaint should be dismissed as moot. (*Id*. at 24-25). That is so, Defendants say, because, even before filing this action, Plaintiff had both graduated from UAB with an undergraduate degree in accounting and been admitted to UAB's graduate program for candidates seeking a Master of Business Administration ("MBA"), a program in which he remains enrolled to this day. (*Id*.). To establish those facts, Defendants refer the court to an affidavit from the UAB registrar, Cynthia Terry. (Doc. 19-1).

## II.    Discussion

### A.    Mootness

The court first considers Defendants' claim that the Complaint is due to be dismissed as moot. "[A] case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Hall v. Secretary, Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018) (quoting *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001), quoting, in turn, *Florida Ass'n of Rehab. Facilities, Inc. v. Florida Dep't of Health and Rehab. Servs*., 225 F.3d 1208, 1216-17 (11th Cir. 2000)). In evaluating whether a complaint is moot, a court must consider each form of relief requested by the plaintiff and whether it remains a meaningful remedy. *See Carver Middle School Gay-Straight Alliance v. School*

*Bd. of Lake Cty., Fla.*, 842 F.3d 1324, 1330 (11th Cir. 2016). "[T]he burden of

proving mootness generally falls heavily on the party asserting it." *Flanigan's*

*Enterprises, Inc. of Ga. v. City of Sandy Springs, Ga.*, 868 F.3d 1248, 1256 (11th

Cir. 2017) (en banc).

Defendants raise their mootness claim for the first time in their reply brief in

support of their motion to dismiss rather than in their motions to dismiss

themselves. However, mootness implicates the court's subject matter jurisdiction

because it derives directly from Article III's case-or-controversy limitation. *Al*

*Najjar*, 273 F.3d at 1335. As such, the issue of mootness may be raised at any

time; indeed, even if no party raises it, a federal court has an obligation to do so

*sua sponte* upon being faced with materials indicating the case has potentially

become moot. *See United States v. Secretary, Fla. DOC,* 778 F.3d 1223, 1226–27

(11th Cir. 2015)*; Cook v. Bennett*, 792 F.3d 1294, 1299 n. 3 (11th Cir. 2015);

*National Advert. Co. v. City of Miami*, 402 F.3d 1329, 1331-32 (11th Cir. 2005);

*see also* Fed. R. Civ. P. 12(h)(3). Accordingly, the court will take up the issue.

The inquiry into whether a case is moot is subject to standards applicable

under Fed. R. Civ. P. 12(b)(1), which authorizes a motion to dismiss for lack of

subject-matter jurisdiction. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d

1173, 1182 (11th Cir. 2007). A Rule 12(b)(1) motion may raise either a factual

attack or a facial attack to jurisdiction. *See McElmurray v. Consolidated Gov't of*

*Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Facial attacks are

based on the complaint's allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529

(11th Cir. 1990). On the other hand, a factual attack challenges "the existence of

subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside

the pleadings, such as testimony and affidavits, are considered." *Id.*

Defendants' contention that the action is moot is based on allegations that,

after receiving an "F" in the AC 490 course, Plaintiff nonetheless both received his

undergraduate accounting degree from UAB and has enrolled in UAB's graduate

MBA program. Those facts are not pled in the Complaint. Rather, Defendants

allege them in their reply in support of their motions to dismiss, relying upon an

attached affidavit of the UAB registrar, Terry. Defendants' mootness argument

thus represents a factual attack on jurisdiction for purposes of Rule 12(b)(1), so the

court is authorized to consider Terry's affidavit. *See State of Ala. ex rel. Baxley v.

Woody*, 473 F.2d 10, 12 (5th Cir. 1973)[6]; *Professional Helicoptor Pilots Ass'n

Local 102 v. United States Dep't of The Army*, 2013 WL 6837555, at *4 (M.D.

Ala. Dec. 26, 2013).

Although Defendants assert that Plaintiff's "Complaint" should be dismissed

as moot (Doc. 19 at 25), the only relief Defendants actually discuss is Plaintiff's

---

[6] The decisions of the former Fifth Circuit handed down before October 1, 1981 are binding in
the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en
banc).

claims to the extent they seek injunctive relief, *i.e.*, "the changing of Plaintiff's grade" in the AC 490 course. (*Id.*) In particular, Defendants highlight that Plaintiff says he " 'needs this remedy so that he may move forward with his goal of attending graduate school.' " (*Id.* (quoting Doc. 16 at 10)). Defendants emphasize, however, that, even before filing this action, Plaintiff had, in fact, both already earned his undergraduate accounting degree from UAB and enrolled in UAB's graduate MBA program. Plaintiff does not contest those allegations. Defendants maintain, therefore, that the "changing of Plaintiff's grade will have zero impact" because "whatever this court's ruling, Plaintiff's enrollment and graduation from his MBA program will be unaffected." (Doc. 19 at 25).

In support of their mootness argument, Defendants rely on *DeFunis v. Odegaard*, 416 U.S. 312 (1974). In that case, the plaintiff raised an equal protection challenge to his denial of admission to a state university law school, and the trial court agreed with his claim, ordering the school officials to admit him. However, the school officials appealed, and by the time the case was heard by the Supreme Court, the plaintiff was already in his third and final year and had registered for his last quarter of classes, and school officials had pledged he would be permitted to complete that term. In a five-to-four decision, the Supreme Court held that the case was moot because it was apparent that, in the normal course of

events, the plaintiff was going to graduate and earn his degree irrespective of how the claim might be resolved on the merits. *Id.* at 316-20.

As *DeFunis* exemplifies, claims by students against educational institutions, at least to the extent they seek declaratory and injunctive relief, are often moot once a student graduates because he or she will no longer be subject to the school action or policy challenged in the litigation. *See also, e.g., Carver Middle Sch. Gay-Straight Alliance*, 842 F.3d at 1330; *Adler v. Duval Cty. Sch. Bd.*, 112 F.3d 1475, 1477-78 (11th Cir. 1997); *Doe v. Marshall*, 622 F.2d 118, 119 (5th Cir. 1980); *Sapp v. Renfroe*, 511 F.2d 172, 175 (5th Cir. 1975). Courts have recognized, however, that when a student's claim challenges school action that has resulted in a record of discipline or other negative information that may jeopardize future educational and employment opportunities, a demand that school officials be made to expunge the student's record is not moot based on the student's graduation or withdrawal. *See Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007); *Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 72-73, 74 (1st Cir. 2004); *Papish v. Board of Curators of Univ. of Mo.*, 464 F.2d 136, 142 (8th Cir. 1972), *rev'd on other grounds*, 410 U.S. 667 (1973); *Winnick v. Manning*, 460 F.2d 545, 548 n. 3 (2d Cir. 1972); *cf. Mahavongsanan v. Hall*, 529 F.2d 448, 449 (5th Cir. 1976) (appeal by school officials challenging the plaintiff's entitlement to a degree was not mooted by her graduation, in part because the officials had a continuing

interest "to eliminate an ongoing stigma of erosion of their academic certification process"). That principle has been applied in cases in which the negative information relates to failing course grades. *See Constantine v. Rectors and Visitors of Geo. Mason Univ.*, 411 F.3d 474, 496 n. 15 (4th Cir. 2005) ("Since Constantine graduated from GMU's law school, all of her claims for injunctive relief are now moot, except for her request that GMU expunge the failing grade from her record."); *Warters v. Laura*, 2013 WL 371661, at *4 (N.D.N.Y. Jan. 29, 2013) (finding claims by former student were not mooted by her medical withdrawal, noting that her "transcript apparently continue[d] to reflect a failing grade"); *Chalmers v. Lane*, 2003 WL 23109794, at *7 (N.D. Tex. Dec. 23, 2003) (student's claim seeking an injunction to reinstate his passing grades was not mooted by his temporary suspension from the program); *Block v. Rockford Pub. Sch. Dist. #205*, 2002 WL 31856719, at *2 (N.D. Ill. Dec. 20, 2002) ("While Amanda's graduation makes some of the relief sought unavailable (being allowed on the high school softball team), other relief sought (corrections to grade reports) could be available."); *but see Lewis v. Thomas*, 489 F.2d 700, 700-01 (3d Cir. 1973) (summarily holding that the plaintiff's graduation mooted her claim for a permanent injunction, not only to the extent it had mandated that the plaintiff be permitted to attend school but also insofar as it had ordered "the defendants to

expunge from their records all reference to the dismissal of the plaintiff and the failing grades giving to her for the last semester of the [prior] school year").

Contrary to Defendants' assertion, *DeFunis* is not controlling. The claims there were moot because the plaintiff challenged the decision to deny him admission to law school, but it appeared that he would be able earn his degree from that program regardless of how the Supreme Court were to rule on the merits. Here, on the other hand, Plaintiff's claim is not based on any decision by UAB to deny him admission or continued participation in any degree program, undergraduate or graduate. Instead, his claims focus squarely on the decision to give him an "F" in the AC 490 course, based on a determination that he engaged in misconduct by preparing Reeser's business tax return for a fee. Admittedly, it appears that neither the "F" nor any finding by UAB that Plaintiff engaged in misconduct ultimately prevented him from earning his accounting degree or being admitted to the university's MBA program. Nevertheless, the court thinks it possible that Plaintiff's failing grade in an advanced accounting course, the associated diminution in his grade point average, and/or a record that was determined to have he engaged in misconduct by preparing Reeser's tax return for a fee without authorization could potentially impair Plaintiff's ability to secure other graduate school opportunities or future employment, in the field of

accounting or otherwise. As such, Plaintiff's demands for declaratory and injunctive relief continue to present a live controversy and are not moot.

Moreover, even putting equitable relief to one side, Plaintiff has demanded compensatory and punitive damages on his § 1983 claims. Defendants have articulated no argument for why those claims for monetary relief might be moot. Indeed, it is well established that a student's graduation does not moot claims for damages. *See Carver Middle Sch. Gay-Straight All.*, 842 F.3d at 1330-31; *Adler*, 112 F.3d at 1478; *Sapp*, 511 F.2d at 175. Accordingly, the court concludes that none of Plaintiff's claims for relief are moot.

## B.    The Eleventh Amendment

Both Defendants contend they are protected by immunity under the Eleventh Amendment to the United States Constitution, which provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI. Despite its limited terms, the Eleventh Amendment has long been interpreted as evidencing broader principles of federalism that prohibit federal courts from exercising jurisdiction over suits against a non-consenting State, not only where brought by citizens of other States or of foreign nations but also by that State's own citizens as well. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Pennhurst State Sch. & Hosp. v. Halderman*,

465 U.S. 89, 97-99 (1984); *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Thus, in the absence of Congressional abrogation of the State's immunity pursuant to Section 5 of the Fourteenth Amendment, *see United States v. Georgia*, 546 U.S. 151, 158-59 (2006); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976), an action brought by a private litigant against a non-consenting State or one of its agencies or departments is proscribed by the Eleventh Amendment. *See Pennhurst*, 465 U.S. at 100; *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

This defense also implicates jurisdiction. *See Edelman v. Jordan*, 415 U.S. 651, 678 (1974) (holding that the Eleventh Amendment immunity defense "partakes of the nature of a jurisdictional bar" sufficient that it may be raised for the first time on appeal); *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) ("Because the Eleventh Amendment represents a constitutional limitation on the federal judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment." (citation omitted)). Challenges to subject matter jurisdiction generally fall under Fed. R. Civ. P. 12(b)(1), at least where, as here, the jurisdictional challenge does not implicate the underlying merits of the case. *Bogolin v. Board of Trustees of Ala. A&M Univ.*, 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018). However, unlike mootness and other matters going to subject-matter jurisdiction, Eleventh Amendment immunity may be waived by a State, and

federal courts are not obligated to raise the issue *sua sponte*. *Wisconsin DOC v. Schacht*, 524 U.S. 381, 389 (1998). As such, courts have at times instead examined Eleventh Amendment immunity through the lens of Fed. R. Civ. P. 12(b)(6), which, as further discussed below, authorizes a motion to dismiss for failure to state a claim upon which relief can be granted. *Harris v. Board of Trustees Univ. of Ala.*, 846 F. Supp. 2d 1223, 1231 (N.D. Ala. 2012). In the end, however, whether Defendants' Eleventh Amendment arguments are deemed made pursuant to Rule 12(b)(1) or Rule 12(b)(6) is academic; either way, the legal issue is the same and depends upon whether immunity applies given the well-pled allegations of Plaintiff's Complaint, assumed to be true and drawing reasonable inferences in Plaintiff's favor. *See Bogolin*, 290 F. Supp. 3d at 1262 & n. 2; *Harris*, 846 F. Supp. 2d at 1231 n. 9.

### 1. Claims Against the Board

Plaintiff's claims in this action are brought pursuant to 42 U.S.C. § 1983, which creates a remedy for violations of federal rights committed by persons acting under color of state law.[7] The Board maintains that it is an arm of the State

---

[7] 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State …, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

19

of Alabama and that it is thus immune under the Eleventh Amendment from Plaintiff's suit in its entirety.  Plaintiff correctly does not dispute that the Board is an arm of the State for purposes of the Eleventh Amendment, that the Board has not consented to suit, and that Congress has not abrogated the States' immunity to § 1983 actions.  *See Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 498 (11th Cir. 2015) (citing *Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985)); *Eubank v. Leslie*, 210 F. App'x 837, 844 (11th Cir. 2006).  Indeed, Plaintiff appears to concede that the Board is immune insofar as his § 1983 claims seek damages.  Plaintiff insists, however, that the doctrine established by the Supreme Court's decision in "*Ex parte Young* allows [him] to seek declaratory relief from both Defendants," including the Board, despite the Eleventh Amendment.  (Doc. 16 at 9).  Plaintiff is wrong.

*Ex parte Young* establishes an exception to a State's immunity under the Eleventh Amendment that allows § 1983 "suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *McClendon v. Georgia Dep't of Community Health*, 261 F.3d 1252, 1256 (11th Cir. 2001) (emphasis original).  However, even assuming that Plaintiff is seeking declaratory and injunctive relief otherwise available under that exception, "State agencies ... are never subject to unconsented suit [under § 1983], even under the doctrine of *Ex parte Young*."  *Eubank*, 210 F. App'x at 844.  Rather, "*Ex parte*

*Young* applies only when state officials are sued for prospective relief in their official capacity. It does not permit suit against state agencies or the state itself, even when the relief is prospective." *Id.* (citing *Pennhurst State School & Hosp.*, 465 U.S. at 100-03, and *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981)). Therefore, the Board enjoys Eleventh Amendment immunity as to all of Plaintiff's claims and its motion to dismiss is due to be granted.[8]

### 2. Claims against Dr. Savage

Dr. Savage also contends that she is entitled to Eleventh Amendment immunity to the extent that she is sued her in her official capacity. Suits against state officials in their official capacity are treated as suits against the state itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). As such, state officials sued in their official capacity for money damages under § 1983 are protected by immunity under the Eleventh Amendment. *See Carr v. City of Florence*, 916 F.2d 1521, 1527 (11th Cir. 1990). However, under the doctrine of *Ex parte Young*, neither the

---

[8]In addition to being protected by the Eleventh Amendment, the Board is also correct that it is due to be dismissed because, as a state agency, it is not a "person" subject to suit under § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 65-66 (1989); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). The court also would recognize that the Board's motion to dismiss asks, in the alternative, for an order requiring Plaintiff to provide a more definite statement of his claim in Count I, pursuant to Fed. R. Civ. P. 12(e), (Doc. 6 at 20). However, since the court is granting the Board's motion to dismiss, the court need not address the alternative motion for a more definite statement.

Eleventh Amendment nor the limited scope of § 1983's definition of "person" precludes claims for prospective, injunctive relief against State officials named in their official capacity. *Will*, 491 U.S. at 71 n.10; *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).

Under these principles, Plaintiff's § 1983 claims against Dr. Savage in her official capacity are due to be dismissed as barred by the Eleventh Amendment to the extent they seek damages. However, the motion to dismiss Plaintiff's official-capacity claims against Dr. Savage is due to be denied insofar as Plaintiff seeks prospective injunctive relief. Such relief would include Plaintiff's demand to have his failing grade changed and for expungement of any associated disciplinary finding that he engaged in misconduct. *See Flint*, 488 F.3d at 825; *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003); *see also, e.g., Pervis v. LaMarque Indep. Sch. Dist.*, 466 F.2d 1054, 1058 (5th Cir. 1972) (ordering students' school records be expunged of any reference to suspensions at issue where defendants violated students' constitutional rights by imposing such punishment).

## C.    Failure to State a Claim

Defendants also move for dismissal under Fed. R. Civ. P. 12(b)(6), on the ground that, even absent the Eleventh Amendment, the Complaint fails to state a claim upon which relief can be granted, against Dr. Savage or anyone else. On

such a motion, the "'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). The court assumes the well-pled factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable inferences. *Hazewood v. Foundation Fin. Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam). Rule 12(b)(6) is read in light of Fed. R. Civ. P. 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

Plaintiff contends he is entitled to relief under § 1983 for a violation of his rights under two different provisions of the Fourteenth Amendment, based on his being given a failing grade in the AC 490 course. First Plaintiff contends that such amounted to racially-motivated discipline in violation of the Equal Protection Clause. Plaintiff also claims that UAB's decision to give him the failing grade violated his rights under the Due Process Clause. Defendants argue that the Complaint is due to be dismissed under Rule 12(b)(6) on the ground that Plaintiff has failed to plead facts sufficient to establish a violation of either constitutional provision. Dr. Savage further contends that she is entitled to qualified immunity to the extent she is sued for damages on these claims.

## 1.    Equal Protection

The court first considers Plaintiff's equal protection claims. The Equal Protection Clause[9] generally prohibits state officials from engaging in intentional race discrimination, including as it relates to discipline and other adverse actions in higher education. *See Gratz v. Bollinger*, 539 U.S. 244 (2003); *Rollins v. Board of Trustees of Univ. of Ala.*, 647 F. App'x 924, 938 (11th Cir. 2016); *Carr v. Board of Regents of Univ. Syst. of Ga.*, 249 F. App'x 146, 148 (11th Cir. 2007).

---

[9] The Equal Protection Clause provides that "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

To prevail on a § 1983 equal protection race discrimination claim, a plaintiff has to establish "discriminatory motive or purpose," not merely disparate impact. *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995); *see also Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, 413 (1977).  Plaintiff must also show in this context that the allegedly discriminatory action complained of imposes a threshold level of material adversity, viewed objectively from the perspective of a reasonable person in his position.  *Cf. Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1405–06 n. 11 (11th Cir. 1993) (recognizing that, in the education setting, a § 1983 race discrimination claim based on the Equal Protection Clause is subject to the same analysis as a statutory claim under Title VI of the Civil Rights Act); *McCullough v. Board of Regents of Univ. Sys. of Ga.*, 623 F. App'x 980, 982 (11th Cir. 2015) (recognizing that, to be cognizable under either Title VI or Title IX of the Civil Rights Act, a retaliatory act must be one materially adverse to a reasonable student); *GP by & through JP v. Lee Cty. Sch. Bd.*, 737 F. App'x 910, 916 n. 5 (11th Cir. 2018) (holding that a claim alleging sex discrimination in violation of Title IX requires proof that the student "was subject to an adverse educational action"); *Ali v. Margate Sch. of Beauty, Inc.*, 2011 WL 4625372, at *3 (S.D. Fla. Oct. 3, 2011) ("As applied to the Title IX area, Plaintiff Ali must show that she was deprived of some benefit or suffered some tangible adverse action, such as

decreased grades." (citing *Wills v. Brown Univ.*, 184 F.3d 20, 25 (1st Cir. 1999));

*see also generally Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-39 (11th Cir.

1998) (discussing the element of "adverse employment action" applicable to

disparate treatment discrimination claims under Title VII of the Civil Rights Act).

Finally, because § 1983 does not authorize vicarious liability under the doctrine of

*respondeat superior*, to establish liability under the statute, the plaintiff must

establish that the named defendant caused the constitutional violation. *See Monell*

*v. Department of Social Servs.*, 436 U.S. 658, 694 (1978).

It is assumed for present purposes that giving Plaintiff a failing grade in the

AC 490 course and documenting on his school record that he was sanctioned for

misconduct for having prepared Reeser's tax return for a fee would, if motivated

by Plaintiff's race, constitute material adverse action capable of sustaining an equal

protection claim under § 1983.  It is similarly assumed, purely for the sake of

argument, that Plaintiff's allegations could support that Dr. Savage and members

of the Board participated in taking those actions, although it is far from clear that is

so.  Nevertheless, to survive a motion to dismiss, it is not enough for Plaintiff

simply to allege in a conclusory fashion that Defendants violated the Equal

Protection Clause or discriminated because of race.  *See Twombly*, 550 U.S. at 555

(stating that the plaintiff's allegations must amount to "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not

do."). Rather, while the Complaint need not necessarily allege facts sufficient to make out a classic prima facie case of discrimination under *McDonnell Douglas*[10], *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), Plaintiff still must plead "enough factual matter to plausibly suggest intentional discrimination." *Evans v. Georgia Regional Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017) (citing *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)); *see also Hunt v. Aimco Properties, LP*, 814 F.3d 1213, 1222 (11th Cir. 2016) (holding that to state a claim under § 3604(f)(1) of the Fair Housing Act, "a complaint must allege that the adverse action was taken because of a disability *and state the facts on which the plaintiff relies to support that claim*." (emphasis added, original emphasis omitted)). Moreover, in separating conclusions from facts and deciding whether the latter make out a plausible basis of liability, a court may consider the strength of alternative, lawful explanations for the challenged conduct arising from the alleged facts. *See Twombly*, 550 U.S. at 567-68; *Iqbal*, 556 U.S. at 681-82; *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290, 1295 (11th Cir. 2010).

Plaintiff repeatedly claims that his receipt of a failing grade in the AC 490 class and that his being accused of misconduct for preparing Reeser's tax return was race discrimination in violation of the Equal Protection Clause. (¶¶ 2, 3, 6, 25,

---

[10] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

29).  However, Plaintiff has failed to plead facts sufficient to support the existence of a racial motivation.  Indeed, the sole fact he pleads to that end is that he is African-American while the authority figures with whom he dealt are white.[11] That circumstance, however, while not meaningless, *see, e.g., Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991), falls far short of raising an inference of racially discriminatory intent.  *See Pinder v. Employment Dev. Dep't*, 227 F. Supp. 3d  1123, 1140-41 (E.D. Cal. 2017);  *Holdmeyer v. Veneman*, 321 F. Supp. 2d  374, 382 (D. Conn. 2004); *cf. Chriss v. Royal & Sonalliance Ins. Agency, Inc.*, 2006 WL 1097605, at *9 (N.D. Ga. Apr. 21, 2006) ("[N]o reasonable jury could conclude that a decisionmaker's proffered 'proffered "legitimate reasons were not what actually motivated [his] conduct" ' simply on the basis of his race.").  In particular, noticeably absent from the Complaint is any suggestion that UAB afforded more favorable treatment to any other student, of another race or even his own, who was similarly situated to Plaintiff.  Likewise missing is an allegation that Dr. Savage, any member of the Board, or anyone else involved in the episode ever used language suggestive of racial animus or bias, even generally. Such gaps in the Complaint's narrative alone provide ample ground to dismiss

---

[11] Plaintiff has alleged that Nabors, Cowart, Black, and the two Savefirst representative at the meeting on April 25, 2017, were white (¶¶ 16, 17), although none of those people are defendants. Curiously, Plaintiff has not alleged the race of Defendant Savage.  However, to expedite matters, and because it can make no difference to the result reached, the court recognizes that Savage is also not African-American.  *See* https://www.uab.edu/business/home/inthenews/1007-uab-names-new-chair-of-accounting-and-finance.

Plaintiff's equal protection claims. *See Arafat v. School Bd. of Broward Cty.*, 549

F. App'x 872, 874 (11th Cir. 2013) (granting a Rule 12(b)(6) motion, noting that

"if a plaintiff fails to show the existence of a similarly-situated [comparator],

judgment as a matter of law is appropriate where no other plausible allegation of

discrimination is present," (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.

1997)).

But on top of that, the Complaint affirmatively discloses an alternative, race-

neutral explanation for why Plaintiff received the failing grade: that UAB officials

deemed Plaintiff guilty of misconduct for having prepared Reeser's business return

without authorization and in exchange for being paid a fee of $297.00. Plaintiff

readily acknowledges that he both engaged in that conduct and that, when

confronted, admitted it to school officials. Plaintiff nonetheless insists that UAB's

decision to give him the failing grade amounted to "unwarranted discipline on the

basis of race" (¶ 2) because "he did not solicit business from Mr. Reeser" insofar

as "Reeser approached him away from school after [Reeser] had been rejected by

the volunteer program as ineligible for its services" (¶ 18). However, Plaintiff's

own views on his conduct are immaterial to the inquiry; all that matters is what

UAB decisionmakers understood and believed. *See Alvarez v. Royal Atl.*

*Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("The inquiry into pretext

centers on the employer's beliefs, not the employee's beliefs and, to be blunt about

it, not on reality as it exists outside of the decision maker's head."). Moreover, the only issue raised by Plaintiff's equal protection challenge is whether UAB intentionally discriminated against him because of *race*, not whether UAB's actions were "prudent" or "fair" in some more abstract sense.[12] Provided that a "proffered [lawful] reason is one that might motivate a reasonable [decisionmaker]," a plaintiff cannot cast doubt on it "simply by quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

In the end, the Complaint's allegations support not only that UAB officials actually viewed Plaintiff's dealings with Reeser as unethical or otherwise improper but also that those officials had a rational basis for doing so. Namely, Plaintiff recognizes that, as a student in the AC 490 course, he had to *volunteer* his time in a program providing *free* services to *eligible individuals* who desired help in

---

[12] Although Plaintiff states that his being disciplined was "unwarranted" (¶ 2), the court does not read the Complaint as attempting to state an equal protection claim based on a "class of one" theory, by which a plaintiff asserts that the government subjected him to arbitrary or irrational mistreatment generally, rather than because of his race, sex, or another traditionally protected characteristic. *See Olech v. Village of Willowbrook*, 528 U.S. 562 (2000). The court notes that the Supreme Court held in *Engquist v. Oregon Dep't of Ag.*, 553 U.S. 591 (2008), that "class of one" equal protection claims are not viable in the context of public employment, and there is non-binding authority holding that *Engquist*'s reasoning likewise precludes such claims in public education. *See, e.g., Jones v. Prince George's Cty. Pub. Sch.*, 2016 WL 4077711, at *5 (D. Md. Aug. 1, 2016) (citing cases). But even assuming students can bring "class of one" claims as a general matter, Plaintiff has not sufficiently pled one. To state a cognizable "class of one" claim in this circuit, a plaintiff must allege facts that both (1) identify a comparator who is similarly situated to the plaintiff in all relevant respects but whom the government intentionally treated more favorably and (2) support that there is no rational basis for the difference in treatment. *See Griffin Industries, Inc., v. Irvin*, 496 F.3d 1189, 1202-08 (11th Cir. 2007). As already discussed in the text, Plaintiff's Complaint does not identify any would-be comparator.

preparing their income tax returns.  Plaintiff, however, admits he negotiated and

accepted a *substantial fee* to prepare a tax return for a *business* that was *ineligible*

for assistance under the program and was owned by a person, Reeser, whom

Plaintiff admittedly only knew through his participation in the program.   On its

face, it is unsurprising that UAB officials might frown on that transaction as

unethical, for it could reasonably appear that Plaintiff had exploited his association

with the school and the volunteer program and parlayed it into an unauthorized,

paying business opportunity for himself.  Indeed, the fact that, after being

confronted, Plaintiff attempted to turn over to Dr. Savage the fee paid by Reeser

tends to support that it was not entirely lost upon even Plaintiff himself that his

actions were rationally subject to question.  To the extent that these claims are not

barred by the Eleventh Amendment, they are due to be dismissed pursuant to Rule

12(b)(6) because Plaintiff has failed to plead sufficient factual matter to show an

equal protection violation.[13]

---

[13] Dr. Savage has also argued that, to the extent she is sued for damages in her individual capacity, she is entitled to qualified immunity on Plaintiff's equal protection claims. "[G]overnment officials performing discretionary functions[ ] generally are shielded from liability [or suit] for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Cummings v. Davenport*, 906 F.3d 934, 939 (11th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  However, given the court's determination that the Complaint fails to establish any violation of the Equal Protection Clause, it is unnecessary for the court to consider further whether the relevant constitutional right was "clearly established" or any other issues related to qualified immunity on these claims.  *See Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000).

### 2. Due Process

Plaintiff's remaining claims are founded on the Due Process Clause, which affords two distinct kinds of due process protection, known respectively as "substantive" and "procedural." *See McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc). "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney*, 20 F.3d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)) (footnote omitted). "A finding that a right merits substantive due process protection means that the right is protected against certain government actions regardless of the fairness of the procedures used to implement them." *Id.* (internal quotation marks and citations omitted). A "procedural" due process claim, by contrast, is founded on the proposition that a State is constitutionally obligated to "provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *Id.* at 1561; *see also Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property" (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). A violation of either procedural or substantive due process may form the basis for a suit under § 1983, *id.* at 1555.

Plaintiff does not expressly state in the Complaint upon which component(s) of the Due Process Clause he relies. However, he has clarified in his opposition brief that he has sought to raise both substantive and procedural due process claims. (Doc. 16 at 13-19). Defendants, however, argue that all of Plaintiff's due process claims are subject to dismissal on the merits.

### a. Procedural Due Process

The court begins with Plaintiff's procedural due process theory. Plaintiff contends in the Complaint that his due process rights were violated because he was summoned to the meeting in the Dean's Office on April 27, 2017, with Nabors, Professor Cowart, and the Savefirst representatives without being given prior "notice of the charges against him" and because he was not given a formal "hearing to meet the allegations being leveled against him" before UAB officials gave him an "F" in the AC 490 course. (*See* ¶¶ 17-19; *see also* ¶ 2 ("Mr. Lambert was denied due process before the decision to fail him was made, in that he was not given an opportunity to call witnesses, seek counsel, or cross-examine his accuser(s).")). Plaintiff further expounds in his opposition brief by arguing at length that UAB allegedly failed to follow procedures contained in its "Student Conduct Code" manual as they relate to disciplinary action. (Doc. 16 at 13-18; *see also* Doc. 16-1).

The court assumes that UAB's decision to give Plaintiff the failing grade in connection with a determination that he engaged in misconduct by preparing Reeser's tax return implicates a protected liberty or property interest under the Due Process Clause. *See Hill v. Trustees of Indiana Univ.*, 537 F.2d 248, 252 (7th Cir. 1976) (assuming that the imposition of failing grades as a penalty for plagiarism gives rise to a "property" or "liberty" interest protected by the Fourteenth Amendment); *Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*, 158 F.3d 962, 964 (7th Cir. 1998) (suggesting that a protected due process interest existed relative to giving two high school students failing grades in band class for playing two unauthorized guitar pieces at a band program); *Diseasa v. St. Louis Cmty. Coll.*, 79 F.3d 92, 95 (8th Cir. 1996) (assuming that student handbook setting forth a grievance procedure to contest an allegedly capricious or improper grade can establish a property interest in non-arbitrary grading); *also cf. Board of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84–85 (1978) (assuming the existence of a liberty or property interest in relation to the plaintiff's academic dismissal from state university medical school); *Goss v. Lopez*, 419 U.S. 565, 581 (1975) (holding high school students have a protected due process interest against being suspended for misconduct); *Doe v. Valencia Coll.*, 903 F.3d 1220, 1234 (11th Cir. 2018) ("In the school disciplinary setting, procedural due process requires that colleges give students notice and a hearing before suspending or expelling them."). As such, it is

assumed that at least *some* procedural protections were constitutionally mandated in connection with the decision to fail Plaintiff. The question then becomes what process was constitutionally due.

As a general matter, essential elements of procedural due process are notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Due process, however, is a flexible concept and the particular application of due process varies "as the factual situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976). In assuring adequate protection, a court must consider the private interests affected, "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and the state's interest. *Id.* at 335.

The Eleventh Circuit recently recognized:

> In the school disciplinary setting, procedural due process requires that colleges give students notice and a hearing before suspending or expelling them. *See Nash v. Auburn Univ.*, 812 F.2d 655, 660-61 (11th Cir. 1987) (discussing the type of hearing and notice required when a public college suspended two students for academic dishonesty); *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 158 (5th Cir. 1961) ("[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct."). "The adequacy of the notice and the nature of the hearing" required depend on the facts of the case and the "practical requirements of the circumstances." *Nash*, 812 F.2d at 660.

*Valencia Coll.*, 903 F.3d at 1234. However,

> a student dismissed from a public educational institution for academic reasons is entitled to less process than a student dismissed for

35

disciplinary reasons. *Haberle v. Univ. of Ala.*, 803 F.2d 1536, 1539 (11th Cir. 1986). In fact, the Constitution does not require schools to hold formal hearings for academic dismissals. *Id.*; *see also Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 90 (1978). Procedurally, however, a school is required to engage in a "careful and deliberate" decision-making process. *Haberle*, 803 F.2d at 1539 (quoting *Horowitz*, 435 U.S. at 85). As the Supreme Court explained in *Horowitz*, 435 U.S. at 91, "[b]y and large, public education in our Nation is committed to the control of state and local authorities." (internal citation and quotation marks omitted). Courts are reticent to intrude on that historic control. *Id.*

*Rollins v. Board of Trustees of the Univ. of Ala.*, 647 F. App'x 924, 929-30 (11th Cir. 2016).

The parties clash at the outset over whether UAB's challenged action should be characterized as "academic" or "disciplinary." Defendants claim it is the former while Plaintiff insists it is the latter. That is perhaps not surprising given that, as stated above, academic judgments are given greater deference and entail lesser procedural guarantees than disciplinary ones. Moreover, Plaintiff's failing grade bears some hallmarks of both kinds of action. That is, it can be inferred that UAB gave Plaintiff the "F" not based on an assessment regarding the academic merit of his work but rather as discipline to punish him for preparing Reeser's business return for a fee without authorization, which could be viewed as misconduct not strictly within the confines of the course itself. *See Pham v. University of La. at Monroe*, 194 F. Supp. 3d 534, 545 (W.D. La. 2016), *aff'd sub nom. Dung Quoc Pham v. Blaylock*, 712 F. App'x 360 (5th Cir. 2017); *cf. Horowitz*, 435 U.S. at 89-

90 (holding that the decision to dismiss the plaintiff was "academic" because it "rested on the academic judgment of school officials that she did not have the necessary clinical ability to perform adequately as a medical doctor and was making insufficient progress toward that goal," which was "a judgment … more subjective and evaluative than the typical factual questions presented in the average disciplinary decision.").  On the other hand, Plaintiff does not claim that UAB took any action against him other than to give him a failing grade, a quintessentially *academic* sanction.  *Cf. Disesa*, 79 F.3d at 95 (rejecting the plaintiff's argument that various alleged "procedural irregularities" and "administrative problems in the course" were "sufficient to transport the [plaintiff's failing] grade outside the realm of academic decision.").  The court concludes, however, that even if UAB's action is characterized as "discipline" for Plaintiff's having prepared Reeser's tax return, the Complaint fails to show a violation of Plaintiff's procedural due process rights.

To start with, Plaintiff's contention that UAB allegedly failed to follow disciplinary procedures set forth in its Student Conduct Code and thereby violated due process is misguided.  The court notes that this theory actually appears only in Plaintiff's opposition brief, as the Complaint does not mention the Student Conduct Code.  More fundamental is the point, however, that while government agencies must provide the minimum procedural protections mandated by the

Federal Constitution when depriving a person of a protected liberty or property interest, an agency's failure to follow its own published procedures does not in itself establish a violation of due process under the Fourteenth Amendment. *See ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009); *Smith v. Georgia*, 684 F.2d 729, 732 n.6 (11th Cir. 1982); *Dung Quoc Pham*, 712 F. App'x at 363; *Disesa*, 79 F.3d at 95; *Hill v. Trustees of Ind. Univ.*, 537 F.2d 248, 252 (7th Cir. 1976). The only questions that matter, rather, are (1) "What kind of notice and hearing does the Due Process Clause itself require?" and (2) "Was Plaintiff afforded at least that much process?" *See id.*

Next, even if UAB disciplined Plaintiff for misconduct distinct from academic performance, the Complaint does not allege he was expelled, suspended, put on probation, or otherwise formally restricted in his ability to continue his studies. Rather, the only sanction imposed was the failing grade. Plaintiff's due process claim as pled is founded on an alleged lack of *pre-deprivation* process, *i.e.*, what happened "before the decision to fail him was made." (¶ 2; *see also* ¶¶ 17-20). Plaintiff contends that, prior to such action being taken, he was constitutionally entitled to "due notice of the charges against him and a hearing" (¶ 19), at which, he says, he had to be "given an opportunity to call witnesses, seek counsel, [and] cross-examine his accusers." (¶ 2). However, a failing grade is a deprivation both limited in its immediate tangible effects and susceptible to

remediation after the fact if determined to be erroneous.  In other words, an improper grade does not itself necessarily cause substantial harm that cannot be largely if not entirely undone by later changing the grade on the student's transcript.  As such, Plaintiff was afforded whatever pre-deprivation process to which he might have been entitled at the meeting in the Dean's Office on April 27th.  According to the Complaint, before being given the failing grade, Plaintiff was there advised that UAB officials considered his having prepared Reeser's business tax return for a fee to constitute serious, sanctionable misconduct, and Plaintiff was given an opportunity to tell his side of the story to put his actions in whatever context he might think proper.  Such informal notice and hearing is all the pre-deprivation process required when a public university looks to fire a tenured professor for alleged wrongdoing.  *Jolibois v. Florida Int'l Univ. Bd. of Trustees*, 654 F. App'x 461, 465 (11th Cir. 2016) (citing *Loudermill*, 470 U.S. at 546).  *A fortiori*, it is also enough here, insofar as giving a student a failing grade for non-academic misconduct with no suspension or expulsion him is a far less significant deprivation than the loss of one's livelihood.  *Cf. Haberle,* 803 F.2d at 1539 (no formal hearing required for academic dismissals based on failing grades); *Horowitz*, 435 U.S. at 85-86 (explaining that, when a high school student was suspended for ten days or less for alleged misconduct, "all that [was] required [under *Goss*] was an 'informal give-and-take' between the student and the

administrative body that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.' " (quoting *Goss*, 419 U.S. at 584)).  Plaintiff cites no case to the contrary.

The court does not read the Complaint as asserting a claim that UAB violated due process based on a failure to provide sufficient *post-deprivation* process, that is, after Plaintiff received the failing grade.  But if Plaintiff is pursuing that theory, he has not alleged facts sufficient to state a claim.  Assuming that the Constitution required some formal post-deprivation process, "a procedural due process violation is not complete 'unless and until the State fails to provide due process.' "  *McKinney*, 20 F.3d at 1557 (quoting *Zinermon*, 494 U.S. at 123).  "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."  *Id.*  Plaintiff claims that, after receiving the failing grade, he first asked for and was granted a meeting with Dr. Savage, the chair of the department, at which he was permitted to further plead his case.  Plaintiff does not suggest that he was precluded either from attending that meeting with legal counsel or from presenting whatever evidence and argument he desired.  But even if that meeting with Dr. Savage might be thought also too informal, Plaintiff makes no claim that UAB a lacked administrative grievance procedures by which he could

have obtained a formal hearing at which to argue that his failing grade was an improper disciplinary or academic sanction.  (In fact, Defendants emphasize, and Plaintiff has not disputed, that, after receiving the failing grade, Plaintiff "went through the *full* academic appeals process" at UAB.  (Doc. 19 at 4 (emphasis original))).  Moreover, the Alabama state courts entertain lawsuits by students at public universities and colleges to hear claims alleging arbitrary, capricious, or bad faith grading and discipline.  *See Burch v. Moulton*, 980 So. 2d 392 (Ala. 2007); *Hartman v. Board of Trustees of Univ. of Ala.*, 436 So. 2d 840 (Ala. 1983); *Mustell v. Rose*, 211 So. 2d 489 (Ala. 1968).  Such is enough to show that the State of Alabama provides sufficient post-deprivation remedies in this setting.  *See Valencia Coll.*, 903 F.3d at 1234-35*; Watts v. Florida Int'l Univ*., 495 F.3d 1289, 1294 (11th Cir. 2007).  Insofar as they are not barred by the Eleventh Amendment, Plaintiff's procedural due process claims are due to be dismissed for failure to state a claim.

### b.  Substantive Due Process

Plaintiff's remaining § 1983 claims allege that his being given the failing grade also violated substantive due process. The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (quoting *Daniels v.*

*Williams*, 474 U.S. 327, 331 (1986)).  "The Fourteenth Amendment forbids the government from infringing fundamental liberty interests at all, unless the infringement is narrowly tailored to serve a compelling state interest."  *Waldman v. Conway*, 871 F.3d 1283, 1292 (11th Cir. 2017) (citing *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).  Where a fundamental liberty interest does not exist, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power.  *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).  However, executive action is arbitrary in a constitutional sense only when it is so egregious that it "shocks the conscience."  *Tinker v. Beasley*, 429 F.3d 1324, 1328 (11th Cir. 2005).

First, giving Plaintiff a failing grade did not infringe upon any fundamental liberty interest for purposes of substantive due process.  Students in a public university do not have a fundamental constitutional right to continued enrollment, *Valencia Coll.*, 903 F.3d at 1235 (citing *Plyler v. Doe*, 457 U.S. 202, 221 (1982)), never mind to a passing grade.  Nor does UAB's asserted conduct rise to the level of arbitrary or conscience shocking.  As discussed previously, Plaintiff's allegations support that UAB had a rational basis underlying its decision to give Plaintiff an "F" in the AC 490 course.  Again, Plaintiff was to volunteer his time for in a program providing free services to prepare income tax returns for eligible individuals.  Plaintiff admits, however, that he took a fee of $297.00 to prepare a

tax return for Reeser's ineligible business, without authorization, after having just met Reeser through the program. UAB officials clearly had a plausible, legitimate interest in preventing students from compromising UAB's role in the volunteer assistance program in such a fashion. And that would be so, the court concludes irrespective of whether Plaintiff's conduct actually violated any criminal law or whether Reeser had solicited Plaintiff to do his tax return or offered to pay him a fee. UAB's decision to discipline Plaintiff by giving him the failing grade did not violate substantive due process. *See Dunn*, 158 F.3d at 965-66; *Pham*, 194 F. Supp. 3d at 546. To the extent these claims are not barred by the Eleventh Amendment, they too are due to be dismissed for failure to state a claim upon which relief can be granted.

### D.    Leave to Amend

To conclude his opposition brief, Plaintiff asks for leave to amend to sue the individual members of the Board in their official capacities to seek prospective injunctive relief under the doctrine of *Ex parte Young*. (Doc. 16 at 19). A plaintiff is entitled to amend his complaint as of right one time within 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). After that period expires, a plaintiff may amend only with the written consent of Defendants or leave of court. Fed. R. Civ. P. 15(a)(2). Where requested, however, leave is to be freely given when justice so requires. *Id.* On the other hand, courts need not grant

leave where an amendment would be futile. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Further, in order to comply with Fed. R. Civ. P. Rule 7(b), "[a] motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009).

Defendants filed their respective motions to dismiss on September 11, 2018. (Docs. 6, 7). Thus, the 21-day period in which he had to amend as of right under Rule 15(a)(1)(B) expired on October 2, 2018. Plaintiff did not file either an amended complaint or even a motion for leave to amend by that date. Rather, Plaintiff only filed his opposition brief that contains a request for leave to amend on October 11, 2018. As such, Plaintiff requires leave of court to amend. While Plaintiff has asked for such leave, he has not supplied the court with a proposed amended complaint, although he has vaguely suggested how he would replead if given the chance: by naming the individual members of the Board in their official capacities as defendants in order to press claims for prospective injunctive relief. The court would agree that, under the doctrine of *Ex parte Young*, such claims would not be barred by the Eleventh Amendment. Nevertheless, adding individual Board members would be futile because it would do nothing to cure the fundamental deficiency in the present Complaint, namely, that Plaintiff's allegations do not support that *anyone* at UAB violated his rights under either the

44

Equal Protection Clause or the Due Process Clause in connection with his receipt of the failing grade.  Accordingly, the court will deny Plaintiff's request for leave to amend.

## III.     Conclusion

Based on the foregoing, Defendants' respective motions to dismiss (Docs. 6, 7) are due to be **GRANTED**.  Specifically, all claims against the Board are due to be dismissed as barred by the Eleventh Amendment, as are the claims against Dr. Savage to the extent she is sued for damages in her official capacity.  Plaintiff's remaining claims against Dr. Savage are all due to be dismissed for failure to state a claim upon which relief can be granted, because Plaintiff has failed to plead facts establishing a violation of the Equal Protection Clause or the Due Process Clause. Plaintiff's request for leave to amend, contained in his opposition brief (Doc. 16 at 19), is due to be **DENIED**.  A separate final order will be entered.

**DATED** this 28th day of January, 2019.

_John E. Ott_
_____
**JOHN E. OTT**
Chief United States Magistrate Judge